

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-14-2008

# Robert Holbrook v. Jeffrey Beard

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2080

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Robert Holbrook v. Jeffrey Beard" (2008). *2008 Decisions.* Paper 368.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/368

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2080
_____

ROBERT HOLBROOK,
                                                Appellant

v.

SCOTT WALTERS, UNIT MANAGER, SCI-HUNTINGDON;
SUPERINTENDENT KENNETH KYLER; DPTY. SUPERINTENDENT
A.S. WILLIAMSON; LT. K. HOLLIBAUGH; R.M. LAWLER; A. LOVETT;
J. BEARD, SECRETARY PA DEPARTMENT OF CORRECTIONS

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 03-cv-0033
(Honorable Thomas I. Vanaskie)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 10, 2008
Before:  SCIRICA, Chief Judge, HARDIMAN and COWEN, Circuit Judges.

(Filed:  October 14, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM.

    Robert Holbrook, a Pennsylvania state prisoner proceeding pro se, appeals from

the District Court's entry of summary judgment in favor of the defendants.  For the

following reasons, we will affirm.

I.

Holbrook alleges that, while imprisoned at SCI-Huntingdon, prison personnel retaliated against him for filing certain grievances and for his religious affiliation by placing him in administrative custody and ultimately transferring him to a different prison. The District Court's Memorandum of April 4, 2008, thoroughly sets forth the background of this matter, and we summarize only those facts necessary to our decision.

Holbrook was transferred to SCI-Huntingdon from another prison in April 2000 for reasons that the parties dispute. What is not disputed is that Holbrook arrived at SCI-Huntingdon with a lengthy institutional file documenting his involvement in stabbings, assaults and other misconduct, and his suspected affiliation with the Fruit of Islam,[1] while incarcerated in at least six different prisons. Defendant Walters, the Unit Manager of Holbrook's cell block, reviewed his file on intake and made a notation indicating security concerns and suggesting that he be "monitored closely." In January and April 2001, respectively, Holbrook received misconducts for writing a Fruit of Islam slogan on his cell wall and the discovery of a "shank" in his cell.

After these incidents, Holbrook began filing the grievances for which he claims he was retaliated against. In July 2001, Holbrook filed a grievance accusing a prison guard of racial intimidation. In October 2001, Holbrook filed a grievance against a different

---

[1]According to defendants, the Fruit of Islam is the paramilitary wing of the Nation of Islam. Holbrook claims to be a member only of the Nation of Islam and not of the Fruit of Islam, but that point is not relevant to our disposition.

prison guard who had confiscated certain items from his cell. (The guard, following the attacks of September 11, had confiscated a map of Afghanistani terrorist camps, a picture of a "militant," and other materials. The guard's supervisor returned the items to Holbrook that same day after determining that they did not pose a threat to security.) Then, in December 2001, Holbrook and six other prisoners sent an informal complaint to the DOC Office of Professional Responsibility accusing still another prison guard of racially-motivated mistreatment.

Holbrook alleges that defendants' retaliatory conduct began after this incident, and his allegations relate primarily to defendant Walters. According to Holbrook, Walters learned of the informal complaint in January 2002, told Holbrook that he did not like prisoners "going over his head," and demanded that Holbrook withdraw the complaint or that "he would see to it that plaintiff goes under for a long time." In March 2002, Walters asked another prisoner whether Holbrook had "put him up to" joining in the informal complaint and told him that whoever was "behind" it would be "sitting in the hole for a long time." Holbrook later helped another prisoner file a formal grievance against the same prison guard. Walters asked Holbrook whether he had done so and, when Holbrook admitted that he had, Walters said that he was "fed up" with Holbrook's grievances and "was not going to tolerate them or plaintiff causing trouble on his block."

Nothing further occurred until June 10, 2002, when Holbrook requested that Walters grant him an override of his custody level that would allow him to work in the

prison's electrical power plant. Walters thought the request odd because Holbrook previously had refused to work. On June 20, Walters attended an operations meeting where staff were briefed on "the recruitment of inmates in American prisons by radical Islamic groups." Walters then spoke with other prison staff regarding Holbrook's "sudden" interest in the power plant. A corrections officer advised him that Holbrook was rumored to have risen to the rank of Major in the Fruit of Islam and that Holbrook had been telling other prisoners that he was "in the American Taliban."

These circumstances, together with Holbrook's history, prompted Walters to raise concerns with security personnel by memorandum dated June 21, 2002. The memorandum suggested that Holbrook be monitored more closely or placed in administrative custody and stated that "this information is being provided to you for any action you deem appropriate." On June 26, a Major Weaverling (not a defendant) asked Walters to arrange for Holbrook's placement in administrative custody, which Walters did that same day. On July 3, 2002, a Program Review Committee composed of defendants Hollibaugh, Lawler and Williamson reviewed Holbrook's custody status. After reviewing Walter's memorandum and receiving additional information, the committee deemed Holbrook a threat to the security of the institution and approved his retention in administrative custody pending a transfer to a long term segregation unit. Holbrook administratively challenged this determination to no avail. Holbrook also filed a grievance against Walters, alleging that Walters had falsified information in his file in

retaliation for Holbrook's past grievances and complaints. Major Weaverling investigated the grievance and concluded that it lacked merit. Walters, acting on the committee's recommendation, thereafter filed two petitions for Holbrook's transfer to another prison. Those petitions were denied, but a different prison employee filed a third petition on the basis of which Holbrook ultimately was transferred to SCI-Greene.

In January 2003, Holbrook filed his complaint, alleging that defendants had placed him in administrative custody in retaliation for his filing of grievances and complaints and had denied him due process. The District Court dismissed Holbrook's due process claim but allowed his retaliation claim to proceed. The District Court also allowed Holbrook to amend his complaint to assert that defendants had retaliated against him because of his religious affiliation. Following discovery, defendants moved for summary judgment on the retaliation claims, and the District Court granted their motion by order entered April 4, 2007.[2] The District Court also denied Holbrook's timely motion for reconsideration of that ruling by order entered March 31, 2008. Holbrook appeals.[3]

---

[2]In his January 2003 complaint, the only retaliatory action Holbrook alleged was his placement in administrative custody at SCI-Huntingdon. In May 2003, he was transferred to SCI-Greene. Thereafter, he argued in various briefs that the prison transfer was retaliatory as well, but he never sought to amend his complaint to assert it as a discrete claim. Nevertheless, the District Court addressed the prison transfer.

[3]We have jurisdiction pursuant to 28 U.S.C. § 1291. In his brief, Holbrook challenges only the District Court's entry of summary judgment and its application of law on reconsideration. Our review of those rulings is plenary. See In re Tower Air, Inc., 416 F.3d 229, 235 n.7 (3d Cir. 2005); Carter v. McGrady, 292 F.3d 152, 157 (3d Cir. 2002). "Summary judgment is proper if there is no genuine issue of material fact and if, viewing
(continued...)

5

II.

"A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered 'adverse action' at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Carter, 292 F.3d at 157-58. If the prisoner makes that showing, "the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" Id. at 158 (citation omitted). We have explained that this element must be evaluated in light of the "great deference" generally afforded to prison officials' decisions regarding prison administration. See id.

In this case, the District Court held that Holbrook had presented sufficient evidence to show that his conduct was constitutionally protected and that the administrative custody imposed on him was sufficiently adverse. It held, however, that defendants prevailed as a matter of law on the issue of causation. Our careful review of the record leads us to agree.

---

[3](...continued)
the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." Carter, 292 F.3d at 157 n.2. A party opposing summary judgment may not rely on mere allegations, but must instead come forward with specific facts "'showing that there is a genuine issue for trial.'" Lauren v. DeFlaminis, 480 F.3d 259, 266 (3d Cir. 2007) (citation omitted).

The District Court's analysis proceeded in two steps. First, the District Court held that Holbrook had presented no evidence that any of the defendants save Walters had any retaliatory motive. Our review of the record confirms that Holbrook, despite his conclusory allegation that all other defendants "cooperated" with Walters, presented no evidence that any of them did anything other than perform their ordinary administrative functions in reliance on Walters's memorandum.

Second, the District Court held that Holbrook had presented sufficient evidence to raise an inference that Walters's conduct was motivated by retaliation for filing grievances and complaints (though not for his religious affiliation).[4] It concluded, however, that Walters had shown that he would have taken the same action, regardless of Holbrook's activities, for reasons related to penological interests. We agree with this ruling as well.

Walters submitted a declaration explaining in detail the reasons for drafting his June 21 memorandum, including Holbrook's extensive history of misconduct and new-found interest in working at the power plant after he was reported to have told other prisoners that he was "with the American Taliban." Holbrook never came forward with any evidence raising a genuine issue of material fact with regard to these circumstances.

---

[4]Holbrook does not challenge this second conclusion on appeal, but we note our agreement with the District Court. The undisputed facts of record show that defendants were aware of Holbrook's religious affiliation in April 2000 but took no steps to place him in administrative custody until June 2002. Moreover, Walter's alleged threats related solely to Holbrook's filing of grievances, not his religious affiliation.

7

Moreover, Walters's memorandum itself does not recommend Holbrook's placement in administrative custody per se, but instead lists such placement as one among other security options. Under the circumstances, it is clear that Walters would have taken the action he did regardless of Holbrook's protected conduct and that his action was well within the broad discretion afforded to prison personnel in matters of prison administration. See Carter, 292 F.3d at 158-59 (affirming summary judgment in favor of prison official who allegedly had threatened to place inmate in restricted custody for conduct assumed to be protected where quantum of evidence showed that prisoner faced discipline notwithstanding that protected activity).[5]

Accordingly, we will affirm the judgment of the District Court. Holbrook's motion to supplement the District Court record is denied.[6]

---

[5]Holbrook argues that Walter's retaliatory intent can be inferred from the "conflicting rationales" given in the three petitions for his transfer to another prison. Walters, however, prepared only the first two petitions, and they are perfectly consistent (the statements in the second petition regarding asserted terrorist materials that were not included in the first petition were included in Walters's June 21 memorandum, which was attached to the first petition). The third petition, which notes as an additional ground for transfer the need to separate Holbrook and Walters and which resulted in Holbrook's transfer to SCI-Greene, was prepared by another individual who has not been named as a defendant.

[6]Holbrook seeks to supplement the record with a memorandum showing that he continues to suffer adverse consequences as a result of Walters's June 21 memorandum and asks that we order the memorandum expunged from his institutional file. That request is beyond the scope of this appeal.